CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 SEP -1  PM 4: 14

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JAMESSON CLARE DILLER, §
§
    Plaintiff, §
§
v. § 2:15-CV-248
§
CAROLYN W. COLVIN, §
Acting Commissioner of Social Security, §
§
    Defendant. §

## REPORT AND RECOMMENDATION
## TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff JAMESSON CLARE DILLER brings this cause of action pursuant to 42 U.S.C.

§ 405(g) seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner

of Social Security (Commissioner), denying plaintiff's applications for disability benefits and

supplemental security income benefits (SSI). For the reasons hereinafter expressed, the undersigned

United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled

and not entitled to benefits be AFFIRMED.

I.
PROCEEDINGS

On January 27, 2012, plaintiff JAMESSON CLARE DILLER applied for disability insurance

benefits and supplemental security income benefits alleging a disability onset date of May 15, 2010, due

to bipolar disorder, panic disorder, anxiety, depression, and attention deficit-hyperactivity disorder

SS\R&R\Roberson-197.affirm:3

(ADHD). (Tr. 13, 244–56, 270, 276). The Commissioner denied benefits initially on June 24, 2012 (Tr. 133–46) and upon reconsideration on July 25, 2012 (Tr. 150–55). Upon plaintiff's request, a video hearing was held before an Administrative Law Judge (ALJ) on September 5, 2013 (Tr. 72–130), and again on February 13, 2014 (Tr. 49–71)

Plaintiff was born in 1985 and was 24 years old at the onset of her alleged disability. (Tr. 244) She has a high school education and past relevant work as a greeter, stock clerk, cashier, and hotel housekeeper. (Tr. 41, 83). On March 21, 2014, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 10–48). Following plaintiff's unsuccessful administrative appeal of the ALJ's decision, plaintiff sought federal judicial review.

In reaching his decision, the ALJ followed the five-step sequential process in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 15). At step two, the ALJ found plaintiff's anxiety-related disorder, affective mood disorder and personality disorder were severe impairments. (Tr. 16). At step three, the ALJ concluded plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ specifically found plaintiff did not meet the criteria in listings 12.02, 12.04, 12.06, and 12.08. (Tr. 16–17).

After an extensive review of the medical record and determining that plaintiff was not entirely credible regarding her impairments and their impact on her ability to work, the ALJ concluded plaintiff retained the residual functional capacity (RFC) to perform work at all exertional levels but found non-exertional limitations to be present, including the ability to understand and carry out only simple instructions and the ability to interact appropriately with coworkers and supervisors, but with only

limited or superficial contact with the general public. (Tr. 17–41).

At step four, the ALJ found plaintiff could not return to her past relevant work. (Tr. 41). At step five, based on the RFC determination and the vocational expert's testimony, the ALJ found plaintiff was capable of performing other jobs existing in significant numbers in the national economy, including dishwasher, hotel housekeeper, price marker, and document preparer. (Tr. 42–43). The Court notes that the ALJ found plaintiff not capable of past relevant work as a hotel housekeeper, but then found she was capable of performing jobs in the national economy, such as a hotel housekeeper. Plaintiff does not raise this issue, but if it is indeed an inconsistency, the Court finds it harmless error and accordingly, will not address it further. The ALJ ultimately found plaintiff was not under a disability at any time between May 15, 2010, the alleged onset date, and March 21, 2014, the date of the decision. (Tr. 43).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, the following elements must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its

own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

### III.
### ISSUES

The ALJ found plaintiff not disabled at Step Five of the five-step sequential analysis. Consequently, the court's review is limited to whether there was substantial evidence in the record, taken as a whole, to support the finding that plaintiff had the ability to perform other work that exists in significant numbers in the regional and national economies, and whether proper legal standards were applied in making this determination. Plaintiff presents the following issues for review:

1.    Whether the ALJ failed to properly weigh the medical opinion evidence;

2.    Whether the ALJ failed to properly evaluate plaintiff's credibility; and

3.    Whether the ALJ relied on flawed vocational expert testimony.

(*See* Pl.'s Br. at 2).

### IV.
### MERITS

#### A. *ALJ's Treatment of the Medical Evidence*

Plaintiff first challenges the ALJ's determination of plaintiff's RFC, contending the ALJ's

determination does not give controlling weight to the opinion of Wayne W. Chang, M.D., plaintiff's treating psychiatrist. (Pl.'s Br. at 15–20).   Plaintiff further contends the RFC determination was not based on any particular medical findings, and therefore, is not supported by substantial evidence. (Pl.'s Br. at 20).   Plaintiff contends the ALJ rejected the opinion of Dr. Chang as expressed in his Psychiatric/Psychological Impairment Questionnaire and failed to identify substantial evidence contradicting the opinion of Dr. Chang. (Pl.'s Br. at 28 (citing Tr. 41)).   Plaintiff asserts the ALJ failed to review the relevant factors in determining whether the opinion should be adopted, even if it did not satisfy the test for controlling weight. (Pl.'s Br. at 19).

In reaching his determination, the ALJ stated he relied on Dr. Chang's notes and the consultative exam of psychologist Dr. Gradel to arrive at his conclusion that plaintiff was limited in being able to understand and carry out simple instructions and only have incidental or superficial contact with the general public. (*Id.*).   As to the RFC determination, the ALJ discussed plaintiff's testimony and thoroughly summarized it. (Tr. 18–20).   Plaintiff was treated by Dr. Chang via Skype approximately once a month for 45–60 minutes and reported being capable of using the computer and internet. (*Id.*). Plaintiff babysits her three-year old nephew, both with and without her parents present, though she is not paid for this work. *(Id.).*   She has access to and drives a car, once daily to run errands. *(Id.).* Plaintiff has one friend she sees weekly.   Plaintiff likes music, dance, and playing online games. *(Id.).* She also states she likes to watch movies and sleep. *(Id.).*   Plaintiff states medication makes her lethargic, but the record reveals she has repeatedly told Dr. Chang she was not having any side effects. *(Id.).*   As noted by the ALJ, the record also indicates sporadic compliance with her medication. (Tr. 34). In the supplemental hearing, plaintiff testified she had worked at Walmart in Pampa for six months. Plaintiff stated she has not applied for a job since that position, though the record contradicts this. (Tr. 18–20).   She testified she cannot work, due to panic attacks and that she "fudges" it during job

interviews. She said her panic attacks increased during the 2011 holiday season. *(Id.).* The ALJ noted that he did not find plaintiff's allegations regarding her impairments or their impact on her ability to work to be fully credible. (Tr. 34).

The ALJ also summarized plaintiff's mother's testimony. (Tr. 19). Rita Diller testified plaintiff has lived with her all of plaintiff's life. *(Id.).* She stated plaintiff was home-schooled because it was difficult for her to focus on the subject matter. *(Id.).* She also testified plaintiff cannot budget her money. *(Id.).* She said plaintiff is "in charge of cleaning the house," but stated "she cannot." *(Id.).* She said anything that stresses plaintiff results in a "panic attack." She stated plaintiff cannot "keep up with details." *(Id.).* She also said plaintiffs symptoms are managed by Dr. Chang. *(Id.).*

The ALJ compiled a thoroughly extensive nineteen-page summary of the medical record evidence, summarizing the examinations and treatments plaintiff had received for her alleged impairments. (Tr. 20–38). The treatment notes refer to plaintiff sporadically being seen by a therapist in addition to Dr. Chang, but the record does not contain any records from a therapist and plaintiff has provided none for review in this appeal. In the ALJ's summary, he noted two letters written by Dr. Chang for Mrs. Diller's insurance and the Psychiatric/Psychological Impairment Questionnaire requested by plaintiff's counsel. (Tr. 39–41). The letters for Mrs. Diller's insurance were identical other than different dates. The ALJ analyzed the letters from Dr. Chang and compared them to the evidence provided by Dr. Chang's treatment notes and plaintiff's testimony. *(Id.).* In the letters, Dr. Chang stated plaintiff had "3-4 full blown panic attacks a day for a long period of time." The ALJ noted this could only have occurred prior to the alleged onset date as her condition dramatically improved after beginning therapy/medication management with Dr. Chang. *(Id.).* The medical records submitted by Dr. Chang contained no statements to support this frequency. *(Id.).* The letter also stated plaintiff had extreme difficulty leaving home alone or driving, but this was not reflected in the treatment notes, as there were

numerous references to plaintiff driving.  (*Id.*).  Dr. Chang went into detail regarding symptoms of

attention deficit/hyperactivity disorder, but the evidence in the record was that neither plaintiff nor Mrs.

Diller ever agreed to any treatment for ADHD.  (*Id.*).  Dr. Chang stated plaintiff had been unable to

consistently attend college or hold down a job, due to her panic attacks, ADHD, and poor interpersonal

skills.  (*Id.*).  This, however, was in contradiction to what he continually recommended to her, which was

to get a job, enroll in school, take an exercise class, etc.  (*Id.*).  Additionally, on March 15, 2013, Dr.

Chang noted plaintiff's experience in taking care of children and helping her aunt and stated she "seems

to have some caretaking ability for others . . .and [he] encouraged her to explore job options that involve

a caretaking role."  (Tr. 496).  Encouraging plaintiff to seek out caretaking roles is contradictory to Dr.

Chang's assessments in the letters and questionnaire.  Caretaking, particularly of children, would not

seem to be an endeavor a mental health professional would take lightly or recommend if the patient were

not capable to perform the task.  The letters noted plaintiff had no close friends and chronic difficulties

in her relationship with her parents, but the treatment records reflect there were more periods where her

relationship with her parents was going well than when difficulties existed.  (*Id.*).  Last, Dr. Chang noted

plaintiff's prognosis was poor and her treatment has been "tumultuous at times," but this is  in

contradiction to his treatment notes, which show him encouraging her to seek employment, and noting

the meter-reader job she referenced would be good because it would not require significant contact with

the general public.  (*Id.*).  Overall, with the exception of the two letters for the insurance company and

the questionnaire for plaintiff's Social Security application, the ALJ noted Dr. Chang's records reflected

positive treatment and improvement in plaintiff's condition.  (*Id.*).

     Dr. Chang completed The Psychiatric/Psychological Impairment Questionnaire on September

10, 2012, which noted plaintiff had emotional lability, social withdrawal or isolation, blunt, flat, or

inappropriate affect, recurrent panic attacks, persistent irrational fears, generalized persistent anxiety,

feelings of guilt/worthlessness, difficulty concentrating, hostility and irrationality, poor concentration, difficulty staying on tasks, mood lability, poor organization, difficulty following through/finishing tasks/procrastination, limitation in two areas of functioning, and "marked" limitation in 13 areas of functioning. (*Id.*). The questionnaire states plaintiff has lost multiple jobs due to inability to follow instructions, difficulty interacting with peers, supervisors and customers, and periods of intense anxiety and irritability. (Tr. 41). He stated plaintiff does not have a low IQ or reduced intellectual functioning, but that she is incapable of even low stress jobs and that she would miss at least three times per month due to her impairments and/or treatments. (*Id.*). The ALJ considered these statements and noted they were in contradiction to the numerous times Dr. Chang had encouraged plaintiff to seek employment, as summarized in his review of the records. (*Id.*).

The ALJ noted that Dr. Chang was plaintiff's treating physician as was fully detailed in the 19-page review of the medical records, but found Dr. Chang's statements of December 16, 2011, June 21, 2011, and September 10, 2012, contradictory to the evidence in Dr. Chang's treatment notes. (*Id.*). The ALJ stated, "I give weight to Dr. Chang's treatment notes, which have been discussed at length in this decision, but I also find that the [treatment notes] are inconsistent with his opinions as found in two narrative summaries (referenced above) and in a Psychiatric/Psychological Impairment Questionnaire." (*Id.*). The ALJ explained more weight was given to the treatment notes themselves, which spanned a three-year period and spoke for themselves, than in the summarized opinions, particularly the letters solicited by Mrs. Diller for her insurance company to aid in allowing plaintiff to stay on her mother's insurance. (*Id.*). The Questionnaire, the ALJ noted, was in contradiction to the wealth of treatment records by Dr. Chang himself. (*Id.*). Additionally, the opinion of Dr. Gradel, obtained for a consultative exam, was, "Ms. Dillers's mental emotional disorder has improved with current prescribed medication and may continue to improve with ongoing medication management and with the addition of supportive

counseling," which the ALJ found to be consistent with the rest of the record.  (*Id.*).

Good cause for not following the treating physician's opinion may include that the statements are brief, conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or where it is otherwise unsupported by the evidence. *Legget v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). The ALJ demonstrated good cause to not give controlling weight to the summary letters written to the insurance company and the form completed by Dr. Chang. The ALJ thoroughly detailed the ways in which the letters and questionnaire were either inconsistent with or not supported by the evidence from Dr. Chang's own records, which spanned three years of treatment and which were made at the time he was actually treating plaintiff rather than after the fact.

The opinion and diagnosis of a treating physician is generally entitled to considerable weight in determining disability, but "the ALJ has sole responsibility for determining a claimant's disability status." *Newton v. Apfel*, 209 F. 3d 448, 455 (5th Cir. 2000).  It is important to note the ALJ did not entirely discount the opinion of Dr. Chang.  Rather, the ALJ actually relied on the bulk of the Dr. Chang's records to show that the three reports referenced above were not supported by the medical evidence. In fact, the ALJ specifically stated, "I give great weight to Dr. Chang's treatment notes, which have been discussed at length in this decision, but I also find that the above-stated reports are inconsistent with the opinions as found in the two narrative summaries . . . and in a Psychiatric/Psychological Impairment Questionnaire." (Tr. 41).  An additional medical opinion, that of Dr. Gradel, also conflicted with the letters and questionnaire discounted by the ALJ.

The ALJ pointed out that Dr. Chang consistently noted he had encouraged plaintiff to get a job, go to school, etc. and that plaintiff's condition had significantly improved. (Tr. 41).  While the ALJ did not provide a listing of the factors in 20 C.F.R. §§ 404.1527 and 416.927, he did note that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 .

. . ."  (Tr. 18).

The Court finds the ALJ properly declined to give Dr. Chang's opinions, expressed in the two insurance letters and the questionnaire, controlling weight and did not err by failing to perform the statutory analysis outlined in *Newton*.   *Newton* specifically requires the statutory steps be followed "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." 209 F.3d at 453.  Although perhaps not the normal case, the ALJ had substantial evidence in the record contradicting the three opinions in question, but the contradictory evidence was from Dr. Chang's actual treatment notes and the opinion of Dr. Gradel, not from another examining physician. (Tr. 41).  In *Qualls v. Astrue*, the Fifth Circuit discussed the very situation now before this Court. 339 F. App'x 461 (5th Cir. 2009).  The court stated, "[E]ven if we read *Newton* as requiring the ALJ to set forth its analysis of the five statutory elements when declining to give controlling weight to a treating physician, *Newton* does not apply.  The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Id.* at 466–67.  The ALJ's RFC determination here was based on the medical opinions contained in Dr. Chang's treatment notes and Dr. Gradel's opinion.  Accordingly, the ALJ applied the proper legal standard and his decision was supported by substantial evidence.

Plaintiff also argues the ALJ's assessment of plaintiff's residual functional capacity (RFC) was not supported by substantial evidence of record.  The ALJ, however, extensively summarized the records and detailed why he found the three specific summaries or notes not supported by the evidence. (Tr. 18–43).  This is not a case where there were no medical records supporting the ALJ's RFC determination.  Indeed, the ALJ noted he gave great weight to the treatment notes of Dr. Chang and the consultative exam of Dr. Gradel.  Dr. Chang's questionnaire contained areas of limitation, but the ALJ provided a detailed analysis why he did not give full weight to this document, as has

been discussed above.  The fact the limitations listed by Dr. Chang were not incorporated into the

RFC is not the equivalent of not having substantial evidence to support the RFC.  Certain limitations

listed by Dr. Chang were not found to be credible in light of Dr. Chang's three years of treatment

records and the opinion of Dr. Gradel.  Other limitations by Dr. Gradel were factored into the RFC as

they were supported by the evidence, namely that plaintiff had no exertional limitations but was only

limited by being able to understand and carry out simple instructions and could only have incidental

or superficial contact with the general public.  The Court concludes there *was* substantial evidence

supporting the ALJ's RFC determination.

### B.  The ALJ's Credibility Determination

Plaintiff next claims the ALJ erred in his credibility assessment of plaintiff and her mother.

When the uncontroverted medical evidence demonstrates a basis for claimant's subjective

complaints, "the ALJ's unfavorable credibility determination will not be upheld "unless the ALJ

weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's

subjective complaints of pain." *Wilson v. Barnhart*, 129 F. App'x 912, 914 (5th Cir. 2005).  While

"[a]n ALJ 'is bound to explain his reasons for rejecting a claimant's [subjective complaints],' he is

not required to 'follow formalistic rules in his articulation.'" *Hernandez v. Astrue*, 278 F. App'x 333,

339 (5th Cir. 2008).

The ALJ determined plaintiff's statements about "her impairment and their impact on her

ability to work were not entirely credible in light of Ms. Diller's own description of her activities and

lifestyle, the degree of medical treatment required, discrepancies between Ms. Diller's assertions and

information contained in the documentary reports, and the findings made on examination.

Specifically, the physical findings and supporting clinical data do not closely corroborate or correlate

with Ms. Diller's subjective complaints." (Tr. 34).  The ALJ provided several pages of analysis

citing plaintiff's testimony and the records that contradicted her claims. The ALJ thoroughly discussed the objective medical evidence and the nonmedical evidence and highlighted the inconsistencies that provide support for his credibility determination and ultimately, of his evaluation of plaintiff's capacity to work. (Tr. 33–38). The ALJ provided adequate reasons for his credibility assessment, and it was supported by substantial evidence.

Plaintiff additionally argues the ALJ failed to indicate whether he found the testimony of plaintiff's mother, Mrs. Diller, credible or not. (Pl.'s Br. at 24). The ALJ summarized the testimony of Mrs. Diller. The ALJ spent numerous pages detailing the inconsistencies of plaintiff's testimony, which largely mirrors Mrs. Diller's testimony. The omission of a specific credibility finding with regard to Mrs. Diller is not reversible error. Her testimony that plaintiff has panic attacks from anything stressful was contradicted in the medical records of Dr. Chang. This contradiction was discussed fully by the ALJ in his analysis of plaintiff's testimony. *See Wheeler v. Apfel*, (224 F.3d 891, 896 (8th Cir. 2000) (finding the ALJ's failure to list specific reasons for discrediting the testimony of Wheeler's husband was not fatal because the same evidence supported discounting both the plaintiff and her husband's testimony). Other testimony by Mrs. Diller, such as her statements that plaintiff has always had a hard time focusing or completing tasks would be covered by the ALJ's RFC nonexertional limitations, specifically that plaintiff can only understand and carry out simple instructions. The Fifth Circuit has consistently stated that "[p]rocedural perfection in administrative proceedings is not required," and a judgment will not be vacated unless "the substantial rights of the party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Credibility determinations are reserved to the Commissioner and this Court may not reconsider those determinations *de novo* or substitute its judgment for the ALJ's. No reversible error has been shown.

### C.  *The ALJ's Reliance on the Vocational Expert's Testimony*

At step five of the sequential analysis, the ALJ relied upon Vocational Expert (VE) testimony to find plaintiff not disabled.  The ALJ determined jobs existed in significant numbers in the national economy which plaintiff could perform including the jobs of dishwasher, hotel housekeeper, price marker, and document preparer.  Plaintiff argues the VE testimony was in response to an improper hypothetical question because the hypothetical failed to incorporate all of plaintiff's mental limitations.  (Pl.'s Br. at 24).  Specifically, plaintiff argues the ALJ found moderate restrictions in social functioning and in concentration, persistence, or pace, but did not include these limitations in the hypothetical presented to the VE.  (*Id.* at 24–25).  The ALJ's hypothetical asked the VE to consider an individual who was limited to understanding, remembering, and carrying out simple instructions with only incidental or superficial contact with the general public.  (*Id.* at 25).  Plaintiff concedes that "the ALJ's moderate restriction on social functioning may be accounted for by limiting the claimant to only incidental contact with others, but contends the limitation to simple work fails to account for the moderate restriction found in Ms. Diller's concentration, persistence, or pace."  (*Id.*).

A moderate limitation in concentration, persistence, and pace is not inconsistent with work that requires the ability to follow simple instructions.  In *Westover v. Astrue*, the Court found that where the ALJ incorporated of all the functional limitations he found in his RFC assessment into the hypothetical, the inclusion that the plaintiff could perform detailed, but not complex instructions, indicated incorporation of the claimant's impairment in concentration, persistence, or pace.  No. 4:11-cv-816, 2012 WL 6553102, *9–10 (N.D. Tex. Nov. 16, 2012) (Cureton, M.J.); *see also Hodgson v. Astrue*, No. 4:07-cv-529, 2008 WL 4277168, *8 (N.D. Tex. July 30, 2008) (Bleil, M.J.) (holding that plaintiff had not demonstrated that a restriction to one- to two-step tasks did not properly address a moderate limitation in maintaining concentration, persistence, or pace); *Holmes v.*

*Astrue*, No. 3:11-cv-2634, 2013 WL 638830, *16 (N.D. Tex. Jan. 25, 2013) (Ramirez, M.J.) (holding

substantial evidence supported the ALJ's finding that "Plaintiff's moderate limitation in maintaining

concentration, persistence, or pace restricted his RFC only to the extent that he could . . . understand,

remember, and carry out detailed, but not complex, instructions.").

The ALJ acknowledged the criteria of "Paragraph B," indicating he had considered them,

concluding, "Therefore, the following residual functional capacity assessment reflects the degree of

limitation I have found in the "paragraph B" mental functional analysis." (Tr. 16, n.1).  The record

shows that the ALJ considered and incorporated into his RFC, plaintiff's moderate limitation in

maintaining concentration, persistence, or pace.  The specific inclusion into his hypothetical of "able

to understand and carry out only simple instructions," indicated the incorporation of plaintiff's

impairment in concentration, persistence, or pace.  Because the ALJ properly incorporated each of

the functional limitations he found in his RFC assessment into the hypothetical presented to the VE

and the RFC determination is supported by substantial evidence.  The Court finds that the ALJ did

not present an improper hypothetical and that the testimony of the VE was not flawed.

V.

CONCLUSION

The ALJ performed an extraordinarily thorough analysis, including a 19-page summary of

the medical records and several pages analyzing the medical evidence and testimony in relation to

his decision.  The case is somewhat unusual in that the ALJ discounted the opinions of the treating

physician, Dr. Chang, contained in the letters to the insurance company and the questionnaire

solicited by plaintiff's attorney based largely on Dr. Chang's actual treatment notes.  There are

numerous treatment notes following Dr. Chang's letters to the insurance company that contradict the

statements made regarding the extent of plaintiff's impairments, which lends additional weight to the

opinions contained in the treatment notes being more reliable than the narrative letters to the

insurance company.  While Plaintiff has raised some factual points that, if adopted by the ALJ, could

have resulted in a decision in her favor, such as whether her lack of compliance in taking her

medications was a result of her mental impairments or an indication of the credibility of her

statements regarding her impairment, those were all issues to be determined by the fact finder and

not by this Court.  The ALJ properly weighed the medical opinion evidence, evaluated plaintiff's

credibility, and did not rely on flawed testimony by the VE.  The ALJ's decision was supported by

substantial evidence.

VI.

RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to

the United States District Judge that the decision of the Commissioner finding plaintiff JAMESSON

CLARE DILLER is not disabled and not entitled to disability benefits be AFFIRMED.

VI.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____/s+_____ day of September 2016.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. Petitioner. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin,* 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).